IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

JOEL W. SHIPMAN,

     Plaintiff,

v.                                         CIV No. 13-306 LH/GBW

N.M. DEPARTMENT OF CORRECTIONS, et al.,

     Defendants.

**PROPOSED FINDINGS AND RECOMMENDED DISPOSITION**

     This matter is before the Court on the Motion for Summary Judgment as to Defendants Dr. Barry Beaven and Dr. Patrick Arnold. *Doc. 29.* Having reviewed the briefing (*docs. 33, 34, 35, 36*) and applicable law, and being otherwise fully advised, I recommend that the Court GRANT Defendants' Motion.

I.   **BACKGROUND**

    A.  **Procedural History**

     Plaintiff is a state prisoner in the custody of the New Mexico Corrections Department and was, at all relevant times, housed at Central New Mexico Correctional Facility in Los Lunas, New Mexico. *Doc. 1* at 1. On April 1, 2013, Plaintiff filed a complaint pursuant to 42 U.S.C. § 1983 against the New Mexico Department of Corrections, Secretary of Corrections Gregg Marcantel, Central New Mexico Correctional Facility, Warden J. Garcia, Corizon Medical Services, Inc., and Dr. Thomas

Arnold. *Doc. 1.* He alleged violations of his Eighth Amendment right to be free from cruel and unusual punishment. *Doc. 1.*

Plaintiff filed an amended complaint on August 16, 2013, adding a number of defendants and including a claim under the Due Process Clause for Defendants' alleged failure to comply with grievance procedures. *Doc. 6.* Plaintiff sued all defendants in their individual and official capacities. *Doc. 6* at 1.

On November 12, 2013, the Court entered a Memorandum Opinion and Order dismissing several of Plaintiff's claims *sua sponte* pursuant to 28 U.S.C. § 1915(e)(2). *Doc. 7.* The Court held that Defendant New Mexico Department of Corrections was not subject to suit under § 1983 because it was not a "person" within the meaning of the statute. *Doc. 7* at 3. The Court dismissed Plaintiff's claims against Secretary of Corrections Marcantel in his official capacity following the same reasoning. *Doc. 7* at 4. Additionally, the Court dismissed all claims against Defendants Central New Mexico Correctional Facility and Torrance County Detention Facility because they are not suable entities. *Doc. 7* at 3-4.

The Court next found that Plaintiff had failed to affirmatively link a number of the named defendants—Marcantel, Warden Stewart, Corizon, Inc., Boynton, Delgado, Ezelle, Gutterez, Torrence [sic] County Commissioners, and New Mexico County Insurance Authority—to any of the alleged violations in his original complaint or his amended complaint. *Doc. 7* at 4. The Court dismissed these Defendants *sua sponte* and

2

ordered service on the remaining Defendants—Arnold, Beaven, Trist, and Sammons. *Doc. 7* at 5-6.

Finally, the Court dismissed Plaintiff's due process claim on the grounds that "[t]he failure to respond to plaintiff's grievances did not impose an atypical and significant hardship in relation to the ordinary incidents of prison life, and there is no indication that the failure to respond inevitably affected the length of plaintiff's sentence." *Doc. 7* at 5 (quoting *Murray v. Albany Cnty. Bd. of Cnty. Comm'rs*, No. 99-8025, 2000 WL 472842, at *2 (10th Cir. Apr. 20, 2000)).

Defendants Beaven and Arnold filed the instant Motion for Summary Judgment on June 26, 2014, arguing that Plaintiff failed to state an Eighth Amendment claim. *Doc. 29.* Plaintiff responded on August 13, 2014, (*doc. 33*), and Defendants filed their reply on August 22, 2014, (*doc. 34*). On September 12, 2014, Plaintiff filed an unauthorized surreply (*doc. 35*), to which Defendants objected on September 17, 2014 (*doc. 36*).

### B.  Factual Background[1]

Plaintiff arrived at Central New Mexico Correctional Facility in March 2012. *Doc. 1* at 2. He received an intake physical exam during which he complained of pain in his left shoulder and exhibited a decreased range of motion. *Doc. 29*, Ex. A ¶ 6; Ex. C at 001-03. Plaintiff was taking Naprosyn for his shoulder pain at that time, which the

---

[1] Unless otherwise indicated, the facts in this section are undisputed.

prison re-ordered for him.  *Id.*, Ex. A ¶ 6.  Plaintiff was seen for a follow-up

appointment the next week, on March 6, 2012.  *Id.*, Ex. A ¶ 6-7; Ex. C at 004.

Plaintiff's left shoulder was x-rayed on March 12, 2012.  *Id.*, Ex. A ¶ 8.  The

physician's report indicated normal soft tissues, "no acute fractures," and "[n]o

significant degenerative changes."  *Id.*, Ex. C at 005.  The impression was "unremarkable

study."  *Id.*, Ex. C at 005.  Dr. Beaven, M.D., reviewed the x-ray report on March 19,

2012.  *Id.*, Ex. A ¶ 8; Ex. C at 005.  Plaintiff's shoulder was stabilized in a sling that day.

*Id.*, Ex. A ¶ 8; Ex. C at 006.

Plaintiff submitted a health services request on March 20, 2012.  *Id.,* Ex. C at 007.

He was seen by a registered nurse on March 21, 2012, and by a physician on March 22,

2012.  *Id.*, Ex. A ¶ 9-10; Ex. C at 007-8.  Plaintiff was prescribed Elavil for his shoulder

pain in addition to Naprosyn.  *Id.,* Ex. C a 008.

Plaintiff was examined again on April 3, 2012, after submitting a health service

request form.  *Id.*, Ex. C at 009.  He indicated that his pain level was 3 out of 10 in

severity.  *Id.*, Ex. C at 009.  Plaintiff was advised to take Naprosyn and Elavil as

prescribed, but to return if his pain persisted.  *Id.,* Ex. C at 009.  He was also permitted

to use an arm sling.  *Id.*, Ex. C at 010.

On April 9, 2012, and April 11, 2012, Plaintiff was referred to an upper-level

provider due to his continued complaints of pain.  *Id.,* Ex. C at 011-12.  He was

evaluated by Dr. Barcevac, M.D., on April 19, 2012, who requested an MRI of Plaintiff's

shoulder.  *Id.*, Ex. C at 013-15.  The MRI request was approved on April 23, 2012.  *Id.*, Ex.

A at ¶ 14; Ex. C at 016.

Plaintiff submitted another health service request on April 30, 2012, and was

prescribed 325 mg of Tylenol in addition to his other pain medications.  *Id.*, Ex. C at 019.

On May 14, 2012, Plaintiff reported that the pain in his shoulder had gotten

worse.  *Id.*, Ex. C at 020.  He was continued on his medication and scheduled for an

appointment with an upper-level provider.  *Id.*  Plaintiff saw Dr. Arnold, M.D., on May

17, 2012, but he did not complain of shoulder pain at that time.  *Id.*, Ex. B ¶ 6; Ex. C at

021.

An MRI was performed on Plaintiff's left shoulder on May 22, 2012.  *Id.*, Ex. C at

023-24.  The MRI indicated a torn rotator cuff and a partial dislocation of his biceps

tendon.  *Id.*, Ex. A ¶ 19; Ex. C at 024.  Plaintiff was seen by Dr. Beaven regarding the

MRI results on May 29, 2012.  *Id.*, Ex. C at 026.

On June 12, 2012, an orthopedic consultation was requested for Plaintiff's

shoulder.  *Id.*, Ex. C at 030.  Dr. Arnold proposed an alternative treatment plan on June

13, 2012, recommending "sling and immobilization with NSAIDs pain control for 6

weeks then refer to PT."  *Id.*, Ex. C at 030.  Plaintiff continued to complain of pain and,

on June 26, 2012, Dr. Beaven submitted a request for surgical repair on Plaintiff's

shoulder.  *Id.*, Ex. C at 032.

5

Plaintiff was seen by Dr. R. Sann Gossum, M.D., on July 2, 2012. *Id.,* Ex. A ¶ 27; Ex. C at 033. He was assessed with a rotator cuff tear on his left shoulder. *Id.,* Ex. C at 033. Dr. Gossum discussed treatment alternatives with Plaintiff, and explained the risks of surgery. *Id.,* Ex. C at 033. Plaintiff's shoulder surgery was approved on July 9, 2012. *Id.,* Ex. A ¶ 28; Ex. C at 032.

On July 16, 2012, and July 30, 2012, Plaintiff was prescribed more pain killers, analgesic balm, and was granted permission to use ice on his shoulder to alleviate his pain. *Id.,* Ex. C at 036-37. On August 1, 2012, Dr. Gossum performed surgery on Plaintiff's rotator cuff tear and biceps dislocation. *Id.,* Ex. C at 038-40; *Doc. 1* at 2.

Plaintiff alleges that Defendants "failed to provide adequate medical care," and argues that he "suffered from physical injury and mental and emotional pain due to harmful delay." *Doc. 6* at 12, 15. He seeks compensatory damages in the amount of $150,000 for physical injury and $150,000 for emotional damages, as well as three years of medical care for his injury. *Doc. 1* at 5.

## II.   STANDARD OF REVIEW ON SUMMARY JUDGMENT

Federal Rule of Civil Procedure 56(a) mandates dismissal where no genuine issue as to any material fact exists, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The Court must construe the evidence and draw all reasonable inferences in the light most favorable to the nonmoving party. *Reeves v. Sanderson Plumbing Prod., Inc.,* 530 U.S. 133, 150 (2000).

Summary judgment may be reached on the "pleadings, depositions, answers to interrogatories, and admissions on file" alone. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). The moving party has the burden of demonstrating the absence of a genuine issue of material fact. *Id.* at 323. Once the movant meets this burden, Rule 56(c) requires the non-moving party to designate specific facts showing that there is a genuine issue for trial. *Id.* at 324; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *Vitkus v. Beatrice Co.*, 11 F.3d 1535, 1539 (10th Cir. 1993). The opposing party must present more than conjecture or conclusory statements to defeat a motion for summary judgment. *Barber ex rel. Barber v. Colo. Dep't of Revenue*, 562 F.3d 1222, 1228 (10th Cir. 2009).

The Court is mindful that, when evaluating the pleadings of a party proceeding pro se, a court must liberally construe them and should hold them to a less stringent standard than would be applied to the pleadings of a represented party. *Hall v. Bellmon*, 935 F.3d 1106, 1110 (10th Cir. 1991). A court is not required, however, to assume the role of advocate for the pro se litigant, nor does the mere fact of appearing pro se alleviate the litigant's burden of presenting sufficient evidence to demonstrate a genuine factual dispute that would allow him to survive summary judgment. *DiCesare v. Stuart*, 12 F.3d 973, 979 (10th Cir. 1993) ("Pro se litigants are subject to the same rules of procedure that govern other litigants.").

III.   ANALYSIS

A.  **Plaintiff's Surreply and Motion for Discovery**

The Court must first determine the weight—if any—it will give to a contested filing from Plaintiff.  On September 12, 2014, Plaintiff filed a surreply in opposition to Defendants' motion for summary judgment as well as a motion for additional discovery.  *Doc. 35.*  Defendants Beaven and Arnold objected to this filing on September 17, 2014, requesting that the Court decline to consider it in ruling on their summary judgment motion.  *Doc. 36.*

*1.  The Court Will Not Consider Plaintiff's Surreply Brief*

In his contested filing, Plaintiff alleges for the first time that Defendants Beaven and Arnold "released him to go back to work, before he was properly healed, further damaging him to the point of 'permanent' state of disability he is in now."  *Doc. 35* at 1.  Plaintiff also attaches several documents that purportedly support his allegation.

Defendants Beaven and Arnold contend that Plaintiff impermissibly filed a surreply to their motion for summary judgment without leave of Court, in violation of the Local Rules of Civil Procedure.  The Court has reviewed the contested filing and it is indeed directed at Defendants' motion for summary judgment and reply.  Thus, it constitutes a surreply.  The Local Rules for this district specify that filing a surreply requires leave of the court.  *See* D.N.M.LR-Civ. 7.4(b).  As Plaintiff did not seek leave to file this document, the Court need not consider it.

Defendants further object to the surreply on the basis that Plaintiff is attempting to add "new allegations that Dr. Beaven and Dr. Arnold were deliberately indifferent by releasing him for work duty despite his shoulder injury." *Doc. 36* at 2.  They assert that "the raising of new allegations regarding his ability to return to work . . . at this stage of the litigation is improper and such allegations should not be considered in determining whether summary judgment is appropriate in this action." *Doc. 26* at 2.  The Court agrees that Plaintiff impermissibly raised these arguments for the first time in his surreply, after briefing on the motion for summary judgment was complete.

For the foregoing reasons, Defendants' objection to Plaintiff's surreply is sustained.  The undersigned will not consider this document or Plaintiff's claim that Defendants improperly "released him to go back to work, before he was properly healed" in making a recommendation on Defendants' summary judgment motion.  *Doc. 35* at 1.

### 2.  *Plaintiff's Motion for Discovery is Untimely and Deficient*

Plaintiff's September 12, 2014 filing also includes a Motion for Complete Copy of Medical Records, in which he asks the Court to order that additional medical records be produced "[c]oncerning facts . . . not presented to the Court by defendants that could be and are relevant to [Plaintiff's] case." *Doc. 35* at 5.  Defendants Beaven and Arnold oppose this motion.

First, Defendants argue that Plaintiff's discovery motion is untimely because he never submitted a formal discovery request and he neglected to request access to his medical records until briefing on the motion for summary judgment was complete. Defendants Beaven and Arnold also maintain that, under the New Mexico Department of Corrections' policy, Plaintiff had the ability to request access to his medical records, but failed to do so.

Plaintiff seeks further discovery to aid him in opposing Defendants' motion for summary judgment.  Under Federal Rule of Civil Procedure 56(d), a party resisting a summary judgment motion may obtain additional discovery to enable it to adequately respond.  To do so, the nonmovant must "show[] by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition."  Fed. R. Civ. P. 56(d).  Upon such a showing, the Court may defer considering the motion, deny it, allow additional time for the "essential" discovery to occur, or issue any other appropriate order.  *Id.*

Plaintiff's motion fails for several reasons.  First, instead of responding to Defendants' summary judgment motion with a motion under Rule 56(d), Plaintiff filed a responsive brief.  To preserve an argument that he was denied discovery, plaintiff "needed to respond to the summary-judgment motion with an affidavit under" Rule 56(d). *Johnson v. Roberts*, 410 F. App'x 104, 107 (10th Cir. 2010).  Plaintiff also failed to

include the requisite affidavit with his motion.  *Id.*  Because he did not file a timely affidavit under Rule 56(d), his motion should be denied.

Furthermore, Plaintiff gives no reason to believe that the discovery he requests would create a genuine issue of material fact.  To prevail on Rule 56(d) motion, Plaintiff "must do more than simply allege that further discovery is necessary; '[he] must demonstrate precisely how additional discovery will lead to a genuine issue of material fact.'"  *Lockaby v. Young*, 42 F. App'x 313, 317 (10th Cir. 2002).  Plaintiff claims only that there are "facts . . . that could be and are relevant" to his case.  *Doc. 35* at 5.  He does not identify what these facts may be, nor how they would create a genuine issue of material fact.  Thus, his speculative, generalized request for discovery is "not a legitimate basis to reopen discovery."  *Freeman v. Carroll*, 506 F. App'x 694, 708 (10th Cir. 2012) (internal quotations omitted).

The Court is mindful that Plaintiff is proceeding pro se.  However, this "fact . . . [does] not excuse him from complying with the requirements" of Rule 56(d).  *Hoover v. Ward*, 109 F. App'x 213, 215 (10th Cir. 2004).  Because Plaintiff's motion for discovery falls short of the requirements of Rule 56(d), I recommend that the Court deny it.

**B.** <u>**Defendants Beaven and Arnold are Entitled to Summary Judgment on
Plaintiff's Eighth Amendment Claim**</u>

Plaintiff's complaint consists of a single remaining claim.[2]  Plaintiff alleges that

Defendants, including Beaven and Arnold, violated his Eighth Amendment right to be

free from cruel and unusual punishment when they "acted with deliberate indifference

in their evaluation, care and treatment of his shoulder condition in 2012." *Doc. 29* at 1.

To succeed on a claim of cruel and unusual punishment in violation of the Eighth

Amendment, a plaintiff must establish both an objective and subjective component.

*Farmer v. Brennan,* 511 U.S. 825, 834 (1970).  To satisfy the objective component, the

alleged deprivation must be "'sufficiently serious' to constitute a deprivation of

constitutional dimension."  *Self v. Crum*, 439 F.3d 1227, 1230 (10th 2006).  Specifically,

the plaintiff must allege the denial of "the minimal civilized measure of life's

necessities."  *McClendon v. City of Albuquerque*, 79 F.3d 1014, 1022 (10th Cir. 1996)

(quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)).  The subjective component, in

---

[2] To the extent that Plaintiff is attempting to allege any state law claims for medical malpractice, I
recommend that the Court decline to exercise supplemental jurisdiction.  *See* 28 U.S.C. § 1367.  Upon
dismissal of Plaintiff's federal claims, this Court must decide whether or not it will adjudicate any
remaining state law claims.  *See* 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise
supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it
has original jurisdiction.").  When all federal claims have been dismissed from a case, supplemental state
claims will ordinarily be dismissed without prejudice.  *Roe v. Cheyenne Mountain Conference Resort*, 124
F.3d 1221, 1237 (10th Cir. 1997).  Because I recommend dismissing Plaintiff's Eighth Amendment claim—
the only remaining claim over which this Court has original jurisdiction—and because I see no reason to
depart from the ordinary rule, I recommend that the Court decline to exercise jurisdiction over any state
law claims Plaintiff has attempted to raise.

turn, requires that the defendant acted with a "sufficiently culpable state of mind."

*Farmer*, 511 U.S. at 834 (internal quotation omitted).

Where, as here, a claim is based on inadequate medical care, a prisoner must

establish that the defendant was "deliberately indifferent" to the prisoner's "serious

medical needs."  *Self v*, 439 F.3d at 1230.  A prisoner has a serious medical need "if the

condition 'has been diagnosed by a physician as mandating treatment or . . . is so

obvious that even a lay person would easily recognize the necessity for a doctor's

attention.'"  *Garrett v. Stratman*, 254 F.3d 946, 949 (10th Cir. 2001) (quoting *Oxendine v.*

*Kaplan*, 241 F.3d 1272, 1276 (10th Cir. 2001)).

As to the subjective component, "[d]eliberate indifference . . . does not require a

finding of express intent to harm, but 'must involve more than ordinary lack of due care

for the prisoner's interests or safety.'"  *Berry v. City of Muskogee*, 900 F.2d 1489, 1495

(10th Cir. 1990) (quoting *Whitley v. Albers*, 475 U.S. 312, 327 (1986)).  It is not enough that

the prisoner—or other medical professional—merely disagrees with the course of

treatment provided.  *Perkins v. Kansas Dep't of Corrections*, 165 F.3d 803, 811 (10th Cir.

1999); *see also Ankeney v. Zavaras*, 524 F. App'x 454, 458-59 (10th Cir. 2013); *Taylor v.*

*Dutton*, 85 F.3d 632, at *2 (7th Cir. 1996) (unpublished) ("Mere differences of opinion

among medical personnel over questions of treatment do not give rise to an Eighth

Amendment claim.").  Rather, an official is only deliberately indifferent where his

conduct "disregards a known or obvious risk that is very likely to result in the violation

of a prisoner's constitutional rights." *Berry*, 900 F.2d at 1496.  He must actually be

"aware of facts from which the inference could be drawn that a substantial risk of

serious harm exists, and he must also draw the inference." *Farmer,* 511 U.S. at 837.

Deliberate indifference to serious medical needs may be manifested by failing to

properly treat a medical condition, or by "denying or delaying access to medical care . .

. ." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *see also Sealock v. Colorado*, 218 F.3d 1205,

1211 (10th Cir. 2000); *Self*, 439 F.3d at 1231.  Even "[a] negligent failure to provide

adequate medical care . . . does not give rise to a constitutional violation." *Perkins*, 165

F.3d at 811.

### 1. *Plaintiff's injury constitutes a "severe medical need"*

As an initial matter, I recommend finding that Plaintiff's injury did indeed

constitute a "severe medical need."  As noted above, a medical condition is severe "if

the condition 'has been diagnosed by a physician as mandating treatment or . . . is so

obvious that even a lay person would easily recognize the necessity for a doctor's

attention.'" *Garrett*, 254 F.3d at 949.

Here, Plaintiff suffered a rotator cuff tear in his left shoulder and subluxation of

his biceps tendon, meaning that "his biceps tendon was partially dislocated out of its

normal position on the front of the shoulder." *Doc. 29*, Ex. A ¶19.  This constitutes "a

condition that almost any lay person would realize to be serious." *Johnson v. Karnes*, 398

F.3d 868, 874 (6th Cir. 2005) (referring to severed tendons in inmate's arm); *see also*

14

*Rudkin v. Allred*, No. 12-1471, 2013 WL 1815174, at *6 (D. Colo. 2013) (finding injury to rotator cuff "sufficiently serious").

Moreover, "the prison's own medical staff believed that [Plaintiff's] shoulder condition was serious enough to require evaluation by an orthopedic specialist" and, eventually, surgery. *Montez v. Haczinski*, No. 11-393, 2011 WL 4902959, at *4 (D. Colo. 2011) (discussing rotator cuff tear). Because Plaintiff's condition was "diagnosed by a physician as mandating treatment," I recommend finding that his injury amounted to a "severe medical need."

### 2. *Defendants Were Not Deliberately Indifferent to Plaintiff's Severe Medical Needs*

Having determined that Plaintiff's injury constituted a severe medical need, the Court must now determine whether Plaintiff has raised any genuine issue of material fact as to whether Defendants acted with deliberate indifference in diagnosing and treating his condition. Plaintiff argues that Defendants were deliberately indifferent in (a) improperly delaying his surgery, and (b) inadequately treating his condition and pain symptoms.

#### a) *Defendants Were Not Deliberately Indifferent in Delaying Plaintiff's Surgery*

Plaintiff claims that Defendants were deliberately indifferent to his serious medical needs by unconstitutionally delaying medical attention. Specifically, he contends that his shoulder "need[ed] surgery immediately," but that he did not have

surgery until five months after his initial intake examination.  *Doc. 1* at 2; *see also doc. 6* at

3.  Because he points to no evidence that the delay in surgery itself caused him any

harm, and because he has not raised a genuine issue of material fact as to Defendants'

alleged deliberate indifference, Plaintiff's claim fails.

When a prisoner alleges an unconstitutional delay in access to medical care, such

delay "only constitutes an Eighth Amendment violation where the plaintiff can show

the delay resulted in substantial harm."  *Sealock*, 218 F.3d at 1210-11.  The Tenth Circuit

"ha[s] held that the substantial harm requirement may be satisfied by lifelong handicap,

permanent loss, or considerable pain."  *Garrett*, 254 F.3d at 950.

Defendants Beaven and Arnold, both medical doctors, aver that no harm

resulted from the delay in Plaintiff's surgery.  They claim that a rotator cuff tear and

biceps tendon subluxation are "not . . . urgent or emergent condition[s] requiring

immediate surgery," and that "not obtaining immediate surgery for these conditions

will not cause exacerbation of the injury or other complications."  *Doc. 29*, Ex. A ¶ 34;

Ex. B ¶ 11.  Significantly, they point out—and the Court agrees—that there is no

indication from the record that the "approach taken with Shipman's injury resulted in

any worsening of his condition."  *Doc. 29*, Ex. A ¶ 34; Ex. B ¶ 11.

Plaintiff disputes Defendants' contention, arguing that it "is not consistent with

other expert witnesses of the specialists, that they sent the plaintiff to see."  *Doc 33* at 3.

He avers that "[a]ny serious injury that has been prolonged, before surgery or treatment

will always be more serious, to the patient's health, when not promptly fixed . . . ." *Doc. 33* at 3-4.  However, Plaintiff points to nothing in the record to support this assertion. To the contrary, other doctors he consulted seemed to agree that surgery was not an immediate necessity.  For example, Plaintiff's orthopedic surgeon, Dr. Gossum, stated in his July 2, 2012 Progress Note that he had "discussed . . . treatment alternatives" with Plaintiff and, given the particular circumstances, he "recommended surgery." *Doc. 29*, Ex. C at 033.  This language demonstrates that there were, in fact, other viable methods of treatment besides surgery.  Moreover, nothing in Dr. Gossum's notes—or anywhere else in Plaintiff's medical records—indicates that Plaintiff's surgery had to be performed expeditiously to avoid further injury or harm.

Plaintiff claims that, due to the delay in medical care, he is constantly in pain and now suffers from "permanent disability of [his] left shoulder and arm." *Doc. 33* at 2. But Plaintiff has still not established that these continuing issues were the result of any delay.  In fact, Dr. Gossum informed him that surgery did not guarantee success, and that the risks included the "need for further surgery, persistence of symptoms, [and] failure of repair." *Doc. 29*, Ex. C at 033.  Thus, Plaintiff's continuing symptoms are consistent with the general risks of surgery, regardless of delay.  Because Plaintiff has presented no support—other than his own, conclusory statements—creating a genuine

issue of material fact as to whether the delay in his surgery caused him substantial harm,[3] his claim must fail.

Additionally, Plaintiff has not satisfied the subjective component of the Eighth Amendment test, and the record is devoid of any evidence that Defendants acted with deliberate indifference with respect to his surgery.  "Nothing in the record suggests [Defendants were] *consciously* aware of a serious medical risk to [Plaintiff] and disregarded that risk."  *Mata v. Saiz*, 427 F.3d 745, 760 (10th Cir. 2005) (emphasis in original).  To the contrary, both Defendant Beavens and Defendant Arnold have declared under penalty of perjury that they had no reason to believe that "not obtaining immediate surgery . . . [would] cause exacerbation of [Plaintiff's] injury or other complications."  *Doc. 29*, Ex. A ¶ 34; Ex. B ¶ 11.

Because Plaintiff has failed to create a genuine issue of material fact as to either substantial harm or Defendants' deliberate indifference, I recommend finding that Defendants are entitled to summary judgment on this claim.

> b)  *Defendants' Treatment of Plaintiff Was Not a Constitutional Violation*

Plaintiff claims that Defendants were deliberately indifferent in treating his shoulder injury.  Specifically, he claims that he endured "undue pain and suffering . . .

---

[3] In *Sealock*, the Tenth Circuit found the plaintiff's condition "sufficiently serious to require prompt medical attention" where he was exhibiting symptoms indicative of a heart attack, even though the plaintiff "did not present specific medical evidence of damage to his heart resulting from the delay."  218 F.3d at 1210.  In that case, however, the plaintiff had also "presented general evidence that time is of the essence when someone is experiencing a heart attack."  *Id*.  Here, on the other hand, Plaintiff has not presented any evidence suggesting that time is of the essence when someone has a torn rotator cuff or biceps subluxation.  Thus, *Sealock* is inapposite.

day after day," and argues that Defendants should be held liable for "not providing serious, chronic, pain relief medications to their inmates." *Doc. 33* at 2.

A patient's treatment, including the prescription of pain killers, is a matter for medical judgment and does not constitute cruel and unusual punishment even where it falls short of acceptable medical standards. *Estelle*, 429 U.S. at 107 ("[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."); *see also West v. Scott*, No. 09-01268, 2010 WL 1258060, at *10 (D. Colo. Mar. 29, 2010) (doctor exercised medical judgment in determining what pain relief to provide patient).

Plaintiff has failed to present any facts indicating that Defendants' treatment of Plaintiff fell below acceptable medical standards, much less that Defendants were aware of a substantial risk of harm to Plaintiff and consciously disregarded that risk. To the contrary, the record reflects that Defendants responded to Plaintiff's complaints appropriately. They consistently prescribed Plaintiff pain medication and prescribed additional medications when his pain did not subside. Defendants also attempted to alleviate Plaintiff's pain through other means, such as having him immobilize his arm in a sling.

Moreover, Plaintiff's medical records belie his claims of debilitating pain. For example, on April 3, 2012, he reported his pain as only 3 out of 10 in severity, and, on May 17, 2012, he completely neglected to mention his shoulder pain when he saw Dr. Arnold. When Plaintiff reported that his pain was not going away, he was scheduled for an orthopedic evaluation and surgery. Plaintiff has not disputed any of the above, nor has he presented any evidence to the contrary.

To survive summary judgment, Plaintiff must "go beyond the pleadings and designate specific facts so as to make a showing sufficient to establish the existence of an element essential to [his] case." *Sealock*, 218 F.3d at 1209. He "must point to some evidence allowing an inference [that Defendants] consciously disregarded" a serious medical risk. *Self*, 439 F.3d at 1233. Plaintiff has failed to do. Consequently, his unsupported allegations that Defendants acted with deliberate indifference by failing to prescribe him stronger pain killers are insufficient to create a genuine issue of material fact, and I recommend granting summary judgment on this claim.

3.  *Plaintiff Fails to State a Claim Against Defendants in their Official Capacities*

Plaintiff attempts to bring claims against Defendants Beaven or Arnold in their official capacities. He avers that there is a policy of failing to provide adequate medical care and a "fail[ure] to remedy unlawful conditions." *Doc. 6* at 13. Further, he alleges that Defendants have "failed to promulgate policies to guide subordinates' conduct,

fail[ed] to train, fail[ed] to instruct or supervise subordinates or fail[ed] to respond to evidence of misconduct by subordinates." *Doc. 6* at 13.

A claim against an individual defendant in his official capacity under 42 U.S.C. § 1983 is akin to a claim "impos[ing] liability on the entity that he represents . . . ." *Brandon v. Holt*, 469 U.S. 464, 471 (1985).  To state a claim, Plaintiff must identify a "policy or custom that caused the [his] injury." *Dodds*, 614 F.3d at 1202 (internal citations omitted).  As set forth above, Plaintiff has not created any genuine issue of material fact that would support a claim of cruel and unusual punishment, much less a policy or custom of such.  He therefore falls well short of stating an Eighth Amendment claim against Defendants in their official capacities.

## IV.   CONCLUSION

For the foregoing reasons, I recommend GRANTING Defendants Motion for Summary Judgment (*doc. 29*) and DISMISSING all claims against Defendants Beaven and Arnold in both their individual and official capacities.

Plaintiff is further ordered to show cause in his objections as to why his remaining Eighth Amendment claims against Defendants Trist and Sammons should not also be dismissed pursuant to 28 U.S.C. § 1915 for the reasons set forth in this opinion.

IT IS SO ORDERED.

_____
GREGORY B. WORMUTH
UNITED STATES MAGISTRATE JUDGE

---

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1).  **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition.  If no objections are filed, no appellate review will be allowed.**